**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-22857-BLOOM/Elfenbein**

GENERAL MRO AEROSPACE, INC.,

Plaintiff,

v.

MOOG, INC. and JAMES CODY IVES,

Defendants.
_________________________/

**ORDER ON JURISDICTION AND REMAND**

**THIS CAUSE** is before the Court upon Defendant Moog, Inc.'s ("Moog") Notice of Removal, alleging diversity jurisdiction. ECF No. [1] ("Notice of Removal"). In the Notice of Removal, Moog contends that Defendant James Cody Ives ("Ives") was fraudulently joined to destroy diversity. *Id.* Upon review of the Complaint, the Court concluded that complete diversity does not exist and ordered the parties to file briefing concerning this Court's jurisdiction. ECF No. [10]. Ives filed a Memorandum of Law, ECF No. [11]; Plaintiff General MRO Aerospace, Inc. ("GMA") filed a Memorandum of Law and Motion to Remand, ECF No. [12]; and Moog filed a Memorandum of Law, ECF No. [13]. The Court has reviewed the briefing, the record, applicable law, and is otherwise fully advised. For the reasons that follow, the Court concludes that Moog has not met its burden to show that Ives was fraudulently joined. The case is remanded.

## I. BACKGROUND

### A. State Court Complaint

GMA filed a Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, entitled *General MRO Aerospace Inc. vs. Moog, Inc., et al.*, Case

No. 2026-5878-CA-01 ("State Court Action"), alleging that Moog wrongfully attempted to restrain or eliminate GMA as a competitor in the business of aircraft maintenance, repair, and overhaul ("MRO") services. ECF No. [1-1] at 1. The Complaint alleges that Moog is an Aircraft Original Equipment Manufacturer and serves as the exclusive provider of specific systems and component parts for particular aircraft. *Id.* ¶ 4. Moog entered into a Product Support Assurance Agreement ("PSAA") with Boeing. *Id.* ¶ 18. The PSAA at issue provides specific time frames in which Moog must provide parts to Boeing, Boeing's customers, or designated third parties ("Customer Designees"). *Id.* ¶ 19. The PSAA states that Moog "expressly agreed and understood that the rights and obligations [of the PSAA] are enforceable directly against Seller by Customer, Customer Designee and/or Boeing." *Id.* ¶ 20. The PSAA also requires Moog to provide Component Maintenance Manuals ("CMMs")[1] and related materials to Boeing for Boeing to provide to its customers. *Id.* ¶¶ 13, 21. GMA regularly provided MRO services on Moog parts for dozens of airline customers and regularly ordered parts or components of parts from Moog. *Id.* ¶ 23.

The Complaint alleges that after Moog tried and failed to acquire GMA in 2021, Moog turned to a new strategy — a scheme to cut GMA out of the market by refusing to provide it with parts, as required by its contractual obligations, and with CMMs, which are required to be provided by law. *Id.* ¶¶ 24, 26. In May 2024, GMA was engaged by EgyptAir to provide maintenance and overhaul services to its Airbus A330 fleet, consistent with an existing contract between Moog and Airbus. *Id.* ¶ 27. GMA provided Moog with a delegation letter from EgyptAir and requested that Moog provide the relevant price list so Moog could order the parts necessary to service the aircraft at issue. *Id.* ¶ 28. Pursuant to the agreement with Airbus, Moog had a contractual obligation to do

[1] CMMs provide specific, approved instructions to ensure each approved part is properly maintained, inspected, cleaned, overhauled, and/or replaced so that aircraft can operate safely. ECF No. [1-1] ¶ 13.

so. *Id.*

Despite repeated requests from GMA over a period of weeks, Moog refused to provide a catalogue of parts. *Id.* ¶ 29. Moog's Director of Commercial Aftermarket, Director of Sales and Business Development, and Ives, as the Director of Commercial Aftermarket Business Development for Moog, directed their subordinates to delay their responses to GMA's requested quotations on the parts needed for GMA to fulfill the EgyptAir contract. *Id.* ¶ 29. GMA was eventually forced to seek to purchase the parts elsewhere and/or turn down work. *Id.* Ives falsely represented to GMA that the requested quotations were forthcoming in an attempt to prevent GMA from seeking other sources of parts or remedies for Moog's refusal. *Id.* As a result of Moog's actions, GMA has been unable to provide certain MRO services to EgyptAir and similarly situated prospective customers, for which GMA could not provide quotations or proposals to perform MRO services when asked. *Id.* ¶ 30.

The Complaint alleges that in February 2025, Moog breached the PSAA by refusing to provide parts to GMA despite its contractual obligation to do so. *Id.* ¶ 31. Moog did so in a further effort to push GMA out of the market to force GMA's customers to either purchase a higher-priced replacement part directly from Moog or engage Moog to perform MRO services rather than GMA. *Id.* On February 25, 2025, GMA placed an order with Moog for parts necessary to perform urgently needed service for GOL, an airline operating Boeing aircraft. *Id.* ¶ 32. Despite being aware of the urgency of the matter and being contractually obligated to provide the parts to GMA within seven days, Moog refused to do so. *Id.* ¶ 33. GMA alleges Moog's true reason for not supplying the parts as required by the PSAA was because Moog desired to wield its market power as the sole authorized provider of the relevant parts. *Id.* ¶ 34. By doing so, it sought to unlawfully restrain GMA as a competitor in the market for MRO services. *Id.* ¶ 34. Moog's actions resulted in harm

to GMA's customers in the market by forcing them to either forego repair services or to purchase them from Moog even though they would prefer to purchase them from GMA. *Id.*

Moog stated it was not providing parts because GMA had not requested the part's CMM and had not executed a Proprietary Information Agreement ("PIA"). *Id.* ¶¶ 36–37. However, Moog knew that GMA previously executed a confidentiality agreement that covered the CMMs at issue, which had been in place for years. *Id.* ¶ 38. Moog's claim that it could not sell GMA parts because GMA had not received a CMM from Moog was a fig leaf for Moog's true motivation, which was to deny GMA access to the only source of parts available for long enough that GMA would be unable to fulfill its contract with GOL, and GOL would seek more expensive parts or MRO services from Moog. *Id.* ¶ 39. For years, Moog had been willing to sell GMA parts or engage GMA's services regardless of whether GMA acquired the CMMs from Moog. *Id.* ¶ 40. For example, in November and December 2024, Ives, with his year-end sales goals approaching, sent GMA multiple emails with lists of parts and components Moog was seeking to sell. *Id.* Hundreds of those parts were covered by CMMs that GMA had not previously acquired from Moog. *Id.* As a result of Moog's refusal to fulfill GMA's order as required by the PSAA, GMA was unable to perform the MRO services it had contracted with GOL to provide, directly causing GMA financial and reputational damage. *Id.* ¶ 42. In August 2025, Moog filled the order at issue, despite the fact that none of the circumstances that Moog cited as the reasons for refusing to fill the order as required by the PSAA had changed. *Id.* ¶ 43.

The Complaint asserts three claims: Breach of Contract against Moog (Count I), Tortious Interference with Business Relationships against Moog and Ives (Count II), and Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against Moog and Ives (Count III). ECF No. [1-1].

### B. Procedural History

Moog's Notice of Removal contends that this Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeds $75,000, there exists complete diversity between GMA and Moog, and Ives was fraudulently joined. ECF No. [1]. The Complaint alleges that GMA is a corporation organized under the laws of Florida with its principal place of business in Miami-Dade County, Florida. ECF No. [1-1] ¶ 1. Moog is a New York corporation licensed to do business in Florida with offices in Orange County, Florida, and Broward County, Florida. *Id.* ¶ 2. Ives is a resident and citizen of Florida, and at all relevant times was the Director of Commercial Aftermarket Business Development for Moog. *Id.* ¶ 3. Moog argues that Ives was fraudulently named in the State Court Action to destroy complete diversity, *see* ECF No. [1] at 6, and submits the Declaration of Ives in support, ECF No. [1-4].

Because complete diversity did not exist on the face of the Complaint, the Court ordered the parties to file responses regarding Moog's argument that Ives was fraudulently named in the State Court Action to destroy diversity. The Court now determines whether it has jurisdiction.

## II. LEGAL STANDARD

"[W]hen an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "A district court may remand a case *sua sponte* for lack of subject matter jurisdiction at any time." *Corp. Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1296 (11th Cir. 2009) (citing 28 U.S.C. § 1447(c)). However, "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala.*, 168 F.3d at 410.

If a case is removed based on diversity jurisdiction, "the case must be remanded to state court if there is not complete diversity between the parties." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). However, "'[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction,' the plaintiff has engaged in 'fraudulent joinder,' and the court still has the jurisdictional authority to determine the merits of the case." *Robert L. Strauss, P.A. v. Gemini Ins. Co.*, 742 F. Supp. 3d 1184, 1192 (S.D. Fla. 2024) (citing *Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)).

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal citation omitted).

To resolve a claim of fraudulent joinder, the court adopts a process similar to ruling on a motion for summary judgment. *Id.* at 1538. But "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Id.*

The removing party has the "heavy" burden of proving fraudulent joinder. *Crowe*, 113 F.3d at 1538. "[T]he claims against those defendants who are alleged to be fraudulently joined must be obviously frivolous, and the mere possibility of stating a valid cause of action makes joinder legitimate." *Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023-CIV, 2015 WL

1467726, at *3 (S.D. Fla. Mar. 30, 2015) (internal citation omitted). "'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.' The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983)) (emphasis in original).

## III. DISCUSSION

Moog argues that GMA cannot establish a cause of action against Ives, ECF No. [1] at 8, and contends that the Complaint asserts only two factual allegations specific to Ives, which are inadequate to maintain a claim against Ives and misunderstand his responsibility at Moog. *Id.* Moog argues that the allegations regarding Ives relate to conduct that was not within his scope of authority, and he may not be held personally liable simply because of his general administrative responsibility. *Id.* at 9. Moog argues the Complaint does not state a tortious interference with business relationships claim or a FDUTPA claim. *Id.* at 10–12. Ives agrees with the grounds for removal in Moog's Notice of Removal and argues that he was improperly named as a Defendant as a procedural maneuver to forestall a related and previously filed federal action brought by Moog that is currently pending in the Western District of New York. ECF No. [11] at 3. Ives argues he was fraudulently joined, and there is only one incorrect factual allegation regarding his purported conduct, which is insufficient to sustain the claims alleged in the Complaint. *Id.* at 3.

GMA argues that Ives is properly joined as a Defendant, and Moog has not shown that there is no possibility that GMA can establish a cause of action against Ives. ECF No. [12] at 3.

The Complaint alleges specific and intentional actions that Ives took and false representations that Ives made, which are sufficient to sustain the claims against him. *Id.*

Moog responds that GMA does not provide any testimony or evidence to support its claims, and the single incorrect allegation of Ives's conduct in the Complaint is insufficient to establish either claim. ECF No. [13] at 4–5.

The Court first determines whether GMA has stated a tortious interference with business relationships claim against Ives.

**A. Tortious Interference with Business Relationships—Count II**

Moog argues that the Complaint does not state a tortious interference with business relationships claim against Ives because the conduct alleged in the Complaint was not within Ives's responsibilities as an employee at Moog and, as an agent or employee of Moog, Ives cannot be liable for tortious interference of a business relationship between GMA and his employer, Moog. ECF No. [1] at 12.

Ives argues that the tortious interference claim against him is barred by the independent tort doctrine as the claims are based on Moog's supposed breach of an alleged contractual obligation and because Moog is an integral part of the alleged business relationship. ECF No. [11] at 10–13.

GMA argues that specific allegations support that Ives participated in the tort, and Ives may be liable for tortious interference in GMA's contracts with its airline customers, not with Moog. ECF No. [12] at 4. Additionally, GMA argues that Defendants have not met their burden because Ives's Declaration provides conclusory allegations about his role at Moog and states that he does not recall the specifics of the conduct alleged. *Id.* at 5.

Moog responds that the tortious interference claim is barred by the independent tort doctrine because Ives's alleged role in the delay of sale for the parts for EgyptAir is the sole factual basis for his inclusion in the claim, and the sale of parts to EgyptAir was pursuant to a contract between Moog and Airbus. ECF No. [13] at 7. The claim is also insufficient because Moog is an interested party in the relationship between GMA and EgyptAir. *Id.* at 8. Moog argues that GMA does not dispute Ives's sworn Declaration and submits no affidavits or other testimony supporting GMA's allegations. *Id.* at 5.

"To prevail on a claim of tortious interference with a business relationship under Florida law, a plaintiff must establish four elements: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Pilkington v. United Airlines*, 112 F.3d 1532, 1540 (11th Cir. 1997); *see also Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). "[O]fficers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment." *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005)). However, "personal liability cannot be imposed upon the officer simply because of his or her general administrative responsibility for performance of some function of his or her employment." *De Varona v. Disc. Auto Parts, LLC*, 860 F. Supp. 2d 1344, 1347 (S.D. Fla. 2012). Therefore, to state a claim against Ives personally, GMA must allege that Ives committed or participated in the tortious interference.

As it relates to Ives, GMA alleges it has a contract with EgyptAir to provide MRO services consistent with an existing contract between Moog and Airbus. ECF No. [1-1] ¶¶ 27, 56. Ives knew

of GMA's contract with EgyptAir, and GMA provided Moog with a copy of its delegation letter from EgyptAir. *Id.* ¶¶ 28, 57. After GMA requested that Moog provide a price list for parts needed for GMA to fulfill the EgyptAir contract, Ives and others directed their subordinates to delay their responses to GMA's requests. *Id.* ¶¶ 28–29. Ives falsely represented to GMA that the requested quotations were forthcoming in an attempt to prevent GMA from seeking other sources of parts or remedies for Moog's refusal. *Id.* As a result of Moog's actions, GMA has been unable to provide certain MRO services to EgyptAir. *Id.* ¶ 30. Those allegations are sufficient to state a claim for tortious interference based on Ives's conduct.

Moog and Ives challenge the factual allegations against Ives. In Ives's Declaration submitted with Moog's Notice of Removal, Ives denies the alleged conduct. ECF No. [1-4] ¶ 26. Ives declares he "did not refuse to provide GMA with a catalogue of parts or quotation, nor did [he] direct [his] subordinates to delay responses to GMA with some sort of intent to harm GMA." *Id.* ¶ 30. If Ives "advised GMA that something was forthcoming, [he] would have only relayed information that [he] believed to be true. [He] did not lie to GMA, nor did [he] instruct anyone to lie to GMA." *Id.* ¶ 30. He also declares that he "do[es] not recall any such alleged conduct and [is] wholly unaware of any discussions, initiative, or activity by anyone at Moog intended to cut GMA out of the market." *Id.* ¶ 26. Nor does Ives "recall the specifics of any discussions evaluating GMA's requests for parts or CMMs, [and] any input from [him] would have been made in good faith, in [his] corporate capacity as an employee of Moog[, and] not for any sort of personal benefit or with an intent to harm GMA." *Id.* ¶ 27.

Although Ives expressly denies instructing his subordinates, the remaining denials — that he never lied to GMA and he does not recall the specifics of the alleged conduct but would have acted in good faith — are conclusory and insufficient to meet Defendants' burden that Ives was

fraudulently joined. *See Herrera v. Wal-Mart Stores, Inc.*, Case No. 16-cv-61553, 2016 WL 8669216, at *3 (S.D. Fla. Aug. 22, 2016) (finding statements in a defendant's declaration that "she 'did not place the alleged grape on the floor . . . [and she] did not have any knowledge that a grape was on the floor'" were conclusory and insufficient to establish fraudulent joinder); *Hunt v. Target Corp.*, No. 14-80266-CIV, 2014 WL 1515262, at *2 (S.D. Fla. Apr. 18, 2014) (finding statements that the defendant "was not personally involved in any tortious act or conduct" and he "did not cause or contribute to the dropping or placement of any liquid substance or other substance on the floor" were conclusory). Although GMA did not submit an affidavit in support of its allegations, Ives's conclusory statements are insufficient to contradict the factual allegations in the Complaint. *See Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (". . . [M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Making all factual inferences and resolving all factual disputes in GMA's favor, the Court concludes that Ives's Declaration does not rebut the factual allegations in GMA's Complaint such that there is no possibility of stating a claim against Ives.

Moog and Ives also argue that the tortious interference claim fails because Ives is an agent of Moog, which is a party to the contract. "[A]n agent is not liable for tortious interference with a contract of which his or her principal is a party." *Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 965 (Fla. 4th DCA 2002) (internal citations omitted). However, the Complaint alleges that the relevant business relationship is between GMA and EgyptAir. Neither the Complaint nor Ives's Declaration state that Moog is a party to GMA's contract with EgyptAir. Moreover, the Complaint alleges tortious interference with a business relationship, which need not be confirmed by a contract.

A similar conclusion applies to Moog and Ives's argument that the tortious interference claim fails because Moog and Ives are not strangers to the business relationship. Under Florida law, interference in a business relationship requires that the interfering Defendant be a third party and a stranger to the business relationship. *See Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 9386 (Fla. 4th DCA 1999)). A party may defend against a tortious interference claim by asserting a "privilege to interfere to protect one's own financial and contractual interests." *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 650–51 (Fla. 4th DCA 2020). However, when two parties are in a relationship, one party may assert a tortious interference claim for interfering in contracts with third parties. *See Am. Nat. Title & Escrow of Fla., Inc. v. Guarantee Title & Tr. Co.*, 810 So. 2d 996, 999 (Fla. 4th DCA 2002) ("The fact that American National had a relationship with American Pioneer does not preclude American National from suing American Pioneer for interfering in American National's relationships with third persons.").

The Complaint alleges interference with GMA's relationship with EgyptAir and alleges that GMA was engaged by EgyptAir to provide services "consistent with an existing contract between Moog and Airbus," and that GMA provided Moog with a "delegation letter" from EgyptAir. ECF No. [1-1] ¶¶ 27-28. It is not clear from the Complaint what Moog's interest is in GMA's relationship with EgyptAir. Nor does Ives's Declaration provide such information. Moreover, whether Moog's or Ives's alleged interference is privileged is a *defense* to the claim and is therefore insufficient to show GMA has failed to state a claim in the first instance.[2]

[2] A fraudulent joinder analysis does not determine the merits of the claim. *See Petty v. Wyeth*, No. 3:04-CV-82/MCR, 2005 WL 2893734, at *4 (N.D. Fla. Apr. 28, 2005) ("While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b), the jurisdictional [i]nquiry must not subsume substantive determination.").

Moog and Ives also argue that the tortious interference claim is barred by the independent tort doctrine. The independent tort doctrine is based on the "fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020). A challenged tort "is independent if the plaintiff must prove facts 'separate and distinct from the breach of contract.'" *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1264 (M.D. Fla. 2010) (citation omitted). In addition, the "damages stemming from that [tort] must be independent, separate and distinct from the damages sustained from the contract's breach." *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017). Here, the breach of contract claim and the tortious interference claim both reference Moog's PSAA with Boeing. However, the Complaint alleges that Moog breached its PSAA with Boeing in failing to provide replacement parts GMA requested for GMA to fulfill its obligations to GOL. That allegation is separate and distinct from the allegation that Ives falsely represented that quotations were forthcoming in relation to GMA's contract with EgyptAir. [3] Without further information regarding the rights and obligations of Moog, GMA, and third parties such as EgyptAir and GOL, there is insufficient information to determine whether the alleged tortious interference is independent of the breach of contract claim. Therefore, Moog has not shown that the independent tort doctrine bars this claim.

---

Determining whether interference is privileged or improper is a substantive determination suited for a jury. *See Duty Free America, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (noting that when there is room for different views about the propriety of a defendant's interference with a plaintiff's business relationships, the determination of whether the interference was improper or not is ordinarily left to the jury).

[3] The Complaint alleges that GMA "requested that Moog provide the relevant price list so Moog could order the parts necessary to service the aircraft at issue. Pursuant to the agreement with Airbus, Moog had a contractual obligation to do so." ECF No. [1-1] ¶ 28. This statement is not clear whether Moog had a contractual obligation to provide the price list or to provide the parts.

Establishing fraudulent joinder is a heavy burden. Although the state court may find that Ives is not a stranger to the relationship or may conclude the independent tort doctrine bars this claim, there is a "presumption in favor of remand" and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala.*, 168 F.3d at 411. Because there is a possibility that a tortious interference in a business relationship claim has been sufficiently alleged against Ives, Moog has not met its burden to show that Ives was fraudulently joined. Accordingly, there does not exist complete diversity among the parties and the case must be remanded.

**B. Attorney's Fees**

Under 28 U.S.C. § 1447(c), a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The United States Supreme Court has explained that courts are generally permitted to award attorney's fees under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.* (citations omitted). Considering that Ives submitted a Declaration denying the conduct alleged in the Complaint, Moog's basis for removal was not objectively unreasonable. *See McKin v. Home Depot U.S.A.*, No. 09-81427-CIV, 2010 WL 2612613, at *2 (S.D. Fla. June 22, 2010), *report and recommendation adopted sub nom. McKin v. Home Depot U.S.A., Inc.*, No. 09-81427-CIV, 2010 WL 2612611 (S.D. Fla. June 28, 2010) (declining to award attorney's fees because sworn affidavits that defendants were not involved in the incident "lends support to Defendants' allegations of fraudulent joinder and renders Defendants' decision to remove the case to federal

court objectively reasonable under the circumstances."). The Court declines to award attorney's fees.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that this case is **REMANDED** to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 7, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record